**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

VIRTUAL CREATIVE ARTISTS, LLC,

        Plaintiff,

    v.

GOOGLE LLC,

        Defendant.

Civil Action No. 6:23-CV-00197-XR

## GOOGLE LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

36399836v.1

T<small>ABLE OF</small> C<small>ONTENTS</small>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    The Asserted Patents................................................................................ 2

    B.    VCA's Litigation Campaign .................................................................... 5

III.  LEGAL STANDARD ......................................................................................... 6

        1.    Rule 12(b)(6)............................................................................... 6

        2.    Section 101 ................................................................................. 7

IV.   ARGUMENT ...................................................................................................... 8

    A.    Claim 1 of the '480 Patent and Claim 1 of the '665 Patent Are
        Representative for Purposes of Section 101 ............................................ 8

    B.    *Alice Step One:*  Claim 1 of the '480 Patent and Claim 1 of the '665 Patent
        Are Directed to Abstract Ideas................................................................. 9

        1.    The Claims Are Directed to Unpatentable Human Activities and
            Information Gathering ................................................................ 9

        2.    The Specification and Intrinsic Record Confirms the Abstract
            Nature of the Claims ................................................................ 13

    C.    *Alice* Step Two: Claim 1 of the '480 Patent and Claim 1 of the '665 Patent
        Do Not Recite an Inventive Concept ..................................................... 15

        1.    There is Nothing "Significantly More" Present To Save Their
            Validity .................................................................................... 15

        2.    Determination of Ineligibility Under 35 U.S.C. § 101 Is
            Appropriate On A Rule 12(b)(6) Motion To Dismiss ............................. 18

V.    The Complaint Should be Dismissed with Prejudice ....................................... 20

VI.  CONCLUSION.................................................................................................. 20

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)..............................................................9, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)................................................................2, 6, 8, 9, 12,
                                                                   14, 16, 17, 19, 20

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016)..................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................6, 18, 19

*Ballard v. Devon Energy Prod. Co.*,
   678 F.3d 360 (5th Cir. 2012) ....................................................................20

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................6

*Bilski v. Kappos*,
   561 U.S. 593 (2010)..............................................................................7, 17

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)............................................................7, 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014).................................................................16

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................8, 9, 10, 11, 12, 16

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
   No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ......................19

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).................................................................12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016).................................................................20

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021)...............................................................7, 8

*Fromson v. Advance Offset Plate, Inc.*,
   755 F.2d 1549 (Fed. Cir. 1985)..........................................................................18

*Goldenberg v. Cytogen, Inc.*,
   373 F.3d 1158 (Fed. Cir. 2004)...........................................................................13

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
   No. 6:21-CV-00677-ADA, 2022 WL 2019296 (W.D. Tex. June 6, 2022) .........3

*Health Discovery Corp. v. Intel Corp.*,
   577 F. Supp. 3d 570 (W.D. Tex. 2021)................................................................8

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) ....................................................................18

*Immersion Corp. v. Fitbit, Inc.*,
   No. 17-cv-3886, 2018 WL 1156979 (N.D. Cal. Mar. 5, 2018) .........................16

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
   991 F.3d 1245 (Fed. Cir. 2021)..........................................................................19

*In re Jobin*,
   811 F. App'x 633 (Fed. Cir. 2020) ....................................................................10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)..........................................................................15

*Miller Mendel, Inc. v. City of Anna, Texas*,
   598 F. Supp. 3d 486 (E.D. Tex. 2022)...............................................................18

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
   839 F. App'x 520 (Fed. Cir. 2021).....................................................................14

*Network Apparel Grp., LP v. Airwave Networks Inc.*,
   154 F. Supp. 3d 467 (W.D. Tex. 2015), *report and recommendation
   adopted*, No. 6:15-CV-00134, 2016 WL 4718428 (W.D. Tex. Mar. 30,
   2016), *aff'd*, 680 F. App'x 1003 (Fed. Cir. 2017) ...............................................7

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ......................................................................13, 15

*Plotagraph, Inc. v. Lightricks, Ltd.*,
   No. H-21-3873, 2022 U.S. Dist. LEXIS 141294 (S.D. Tex. Aug. 9, 2022) ......18

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ...............................................................................6

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
   No. 2021-2173, 2023 WL 2904758 (Fed. Cir. Apr. 12, 2023) ............................7

*Sanderling Mgmt. v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ..............................................................................8

iii

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ................................................................. 7

*TLI Communs. LLC v. AV Auto., L.L.C.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................. 16

*Trading Techs. Int'l, Inc. v. IBG, LLC*,
   921 F.3d 1378 (Fed. Cir. 2019) ................................................................. 7

*Two-Way Media Ltd v. Comcast Cable Communs., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................. 8, 19

*Ubiquitous Connectivity, LP v. City of San Antonio*,
   No. SA-18-CV-00718-XR, 2019 WL 4696421 (W.D. Tex. Sept. 26, 2019) ................... 20

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ................................................................. 10

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019) ............................................................ 12, 17

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ......................... 14

*Virtual Creative Artists, LLC v. LinkedIn Corporation*,
   No. 23-3172 (N.D. Ill. May 19, 2023) ......................................................... 5

*Virtual Creative Artists, LLC v. Meta Platforms, Inc.*,
   No. 6:22-cv-265-ADA (W.D. Tex. Dec. 23, 2022) ............................................. 5

*Virtual Creative Artists, LLC v. Pandora Media, LLC*,
   No. 23-2671 (N.D. Ill. April 28, 2023) ........................................................ 5

*Virtual Creative Artists, LLC v. Twitter, Inc.*,
   No. 22-6890 (N.D. Ill. Dec. 8, 2022) ......................................................... 5

## STATUTES

35 U.S.C. § 101 ............................................................................. 1, 4, 5, 6, 7,
                                                       8, 9, 12, 15,
                                                      17, 18, 19, 20

MPEP § 201.04 ................................................................................. 4

## RULES

Fed. R. Civ. Proc. 12(b)(6) ............................................................. 1, 6, 14, 17, 19

36399836v.1

MISCELLANEOUS

H.O. Davis, *Announcement of Winners in the Photoplay-Triangle Scenario Film Corporation Scenario Contest*, PHOTOPLAY, December 1917 Edition at 29 (*available at* https://www.google.com/books/edition/Photoplay/1n0NAQAAIAAJ?q=&gbpv=0#f=false ).............................................................................................2

Kathleen Franz, *Mr. Peanut and Antonio Gentile: A Trademark That Defined a Life*, National Museum of American History, May 6, 2014. https://americanhistory.si.edu/blog/2014/05/mr-peanut-and-antonio-gentile-a-trademark-that-defined-a-life.html ........................................................1

Sam Doust and Sydney Opera House, *Jørn Utzon's Competition Entry*, Google Arts & Culture (undated). https://artsandculture.google.com/story/j%C3%B8rn-utzon-s-competition-entry-sydney-opera-house/CwWBZPmFcy4qKg?hl=en ....................................1

United Press International, *Old Crossword Puzzle Ran in Times April 16*, The New York Times Archives, May 6, 1982. https://www.nytimes.com/1982/05/06/nyregion/old-crossword-puzzle-ran-in-times-april-16.html ...........................................................................1

## I.    INTRODUCTION

Google LLC ("Google") hereby moves to dismiss Virtual Creative Artists, LLC's

("VCA") Complaint (Dkt. 1) under Federal Rule of Civil Procedure 12(b)(6) because all of the

claims of the Asserted Patents are directed to a patent-ineligible abstract idea under 35 U.S.C. §

101: soliciting ideas from individuals and allowing people to vote on them.  Google respectfully

requests oral argument on this motion.

That abstract idea is described succinctly in the first paragraph of the one-page

provisional application to which both Asserted Patents claim priority:

<div style="border:1px solid black;padding:8px">

**THE INFINITY CONCEPT**

The infinity concept allows television viewers the opportunity to participate in their
favorite television show by submitting funny stories to the writers via the internet.
Writers will in turn incorporate these stories into the story-line of each episode.

</div>

Ex. A (Provisional Application No. 60/133,247) ("'247 Provisional" or "'247 Prov.").  What

follows in that one-page provisional application recites no new technology, improved computer

hardware or software.  Rather, it describes basic ideas about soliciting ideas from a group of

people—what is now referred to as "crowdsourcing."  This is a fundamental human activity that

has been practiced for decades, if not centuries.  The Planters Peanut logo comes from a design

contest in 1916.[1]  The now famous design of the Sydney Opera House was the result of an

international design contest in 1954.[2]  And the New York Times crossword puzzle has been

---

[1] Kathleen Franz, *Mr. Peanut and Antonio Gentile: A Trademark That Defined a Life*, National Museum of American History, May 6, 2014. https://americanhistory.si.edu/blog/2014/05/mr-peanut-and-antonio-gentile-a-trademark-that-defined-a-life.html

[2] Sam Doust and Sydney Opera House, *Jørn Utzon's Competition Entry*, Google Arts & Culture, (undated).  https://artsandculture.google.com/story/j%C3%B8rn-utzon-s-competition-entry-sydney-opera-house/CwWBZPmFcy4qKg?hl=en

36399836v.1

incorporating reader submissions for at least forty years.[3]  TV shows and movies, like those

discussed in the Provisional Application, similarly have been using ideas from fans for over a

century.  For example, as early as 1917, *Photoplay* magazine ran contests for aspiring

screenwriters, with over 7,000 submissions.  The magazine noted that two winning "scenarios,"

as scripts were called then, were already "being filmed."[4]  Supreme Court and Federal Circuit

case law has repeatedly stated that claims such as these that take age-old practices and add "over

the Internet" are unpatentable abstract ideas.  So true here.

Nor do the claims' functional and generic references to computer terms save it from

unpatentability at Step Two of the Supreme Court's *Alice* test.  Federal Circuit decisions

repeatedly state that functional language or generic computer claim limitations do not create an

"inventive concept" either taken alone or in combination.  The claims here include only

conventional computer terms appended to the claimed abstract idea.  They do not include

anything "significantly more" that removes them from being unpatentable under Step Two.

Because the Asserted Patents are directed to unpatentable abstract ideas, Google

respectfully requests the Court grant its motion and dismiss the Complaint with prejudice.

## II.      BACKGROUND

### A.      The Asserted Patents

The Complaint (Dkt. 1) alleges infringement of U.S. Patent Nos. 9,501,480 (the '480

Patent) and  9,477,665 (the '665 Patent, and collectively the "Asserted Patents").  Both of the

---

[3] United Press International, *Old Crossword Puzzle Ran in Times April 16*, The New York Times Archives, May 6, 1982. https://www.nytimes.com/1982/05/06/nyregion/old-crossword-puzzle-ran-in-times-april-16.html ("some of the newspaper's puzzles were devised by the puzzle editor, Eugene T. Maleska. Others come from contributors, most of whom submit items regularly, Mr. Greenfield said").

[4] H.O. Davis, *Announcement of Winners in the Photoplay-Triangle Scenario Film Corporation Scenario Contest*, PHOTOPLAY, December 1917 Edition at 29 (*available at* https://www.google.com/books/edition/Photoplay/1n0NAQAAIAAJ?q=&gbpv=0#f=false )

Asserted Patents are titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same." *See*, *e.g.*, Dkt. 1 ¶¶ 9, 34.  The Asserted Patents have an identical specification as the '480 Patent is a continuation of the '665 Patent, and both Asserted Patents claim priority to the '247 Provisional.[5]

Both Asserted Patents relate "to a process for creating media content" based on submissions from end users.  '665 Patent at Abstract; '480 Patent at Abstract; *see also* '480 Patent at 1:20-25; 3:20-22.  According to the Asserted Patents, users can submit "any form of content material that may be stored in file text, video, audio, etc." such as "movies, screenplays, television scripts, book manuscripts, plays, music, music lyrics, newspaper and magazine articles, comic stripes [sic], sweepstakes, print media like calendars, greeting cards, novelty items, digital photographs, etc. as well as any other form of literary work or idea." '480 Patent at 3:30-41.  The submitters also "can receive awards and compensation." *Id.* at 3:42-44.

In the purported invention, "content is developed based, in whole or in part, upon the selected one or more submissions" and "released to an audience which includes end users for review." *Id.* at 4:36-43.  The end users preferably "rate the released content," and this rating is used for the submitter rewards.  *Id.* at 4:46-50.

The application process for both Asserted Patents began with the submission of the '247 Provisional application on May 3, 1999.  The provisional application is one page long.  It describes what it calls "The Infinity Concept" that "allows television viewers the opportunity to participate in their favorite television show by submitting funny stories to the writers via the

---

[5] The contents of the provisional, "as matters of public record, are subject to judicial notice and appropriate for this Court to consider at the pleading stage." *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *6 (W.D. Tex. June 6, 2022) (collecting cases).

internet." '247 Prov.  The viewer-submitted stories are available to writers on an "interactive website site as a research tool to create scripts." *Id.*  "Writers will in turn incorporate these stories into the story-line of each episode." *Id.*

After submitting the '247 Provisional, the applicants submitted a non-provisional parent application[6] to the Asserted Patents on May 5, 2000.  Compl., Ex. B (see "Related U.S. Application Data").  In an effort to overcome an earlier prior art reference (an online screenplay writing contest), the named inventors submitted several affidavits describing earlier conception of the purported invention.  Ex. B at 12.  Named inventor Kenneth Tota described the alleged invention as "an idea to create media content by soliciting ideas and stories interactively on the Web.  People would submit their funny stories via the Internet, which would then be used as the basis for a television show/script, movie, or some other form of media."  Ex. C ¶ 2.[7]  Named inventor Mark Tota similarly described the invention as "concepts for creating a world wide portal for exchanging ideas."  Ex. D ¶ 2.  Relying on these and numerous other similar affidavits, the applicants successfully swore behind the prior art and were issued a patent, the parent of the Asserted Patents here.  *See* Ex. E at 3.

The application for the '665 Patent was filed November 16, 2012.  Compl., ¶ 36.  On June 16, 2016, the pending claims were rejected under Section 101 as directed to an abstract idea.  *See* Ex. F at 5-7.  In response, applicants amended the claims, and referred back to the alleged "original invention in 1998" discussed in the provisional application.  At the same time

---

[6] This application is a "parent" to the Asserted Patents.  "The term 'parent' is applied to an earlier application of an inventor disclosing a given invention."  Manual of Patent Examining Procedure (MPEP) 201.04.

[7] Kenneth Tota also stated that "after reading about recent changes in the patent laws regarding processes and business method patents, I encouraged Michael to see a patent attorney to find out if his idea was patentable," and the provisional application was subsequently filed.  *Id.* ¶ 5.

4

they claimed to have conceived "of a highly technical process … rooted in computer technology." Ex. G at 6. The Examiner then allowed the claims without commenting on Section 101 patentability. Ex. H.

The application for the '480 Patent was filed June 18, 2014. Compl., Ex. A. Similar to the '665 Patent, on May 19, 2016, the pending claims were rejected as directed to "the abstract idea of the creation and distribution of media content." Ex. I at 4-7. On July 19, 2016, applicants amended the claims slightly, referred to "the original invention in 1998" discussed in the provisional application, and claimed to have "conceived of a collection of unconventional and particularly configured subsystems" —even though the specification does not include the term "subsystems." Ex. J at 5. On August 24, 2016, the Examiner allowed the claims. In the Notice of Allowance, the Patent Office stated that one piece of "prior art most closely resembling Applicant's claimed invention" was a "screenplay challenge" in the 1990s where users would submit scripts to collaborate with a "Top Hollywood Screenwriter." Ex. K at 2. The deficiency identified by the Patent Office was that "all of the steps of the Hollywood Film Festival process are *manual*." *Id.* at 3 (emphasis added). It therefore did not disclose "electronically" accomplishing those same steps. *Id.* The Patent Office allowed the claims without commenting on Section 101 patentability. *Id*. at 5.

**B.    VCA's Litigation Campaign**

Nearly two years after the Asserted Patents expired, VCA began a litigation campaign against a variety of unrelated companies and defendants. On March 11, 2022, VCA accused Meta Platforms, Inc. of infringing the '480 Patent through its Facebook system, in a case that has since been dismissed. *See Virtual Creative Artists, LLC v. Meta Platforms, Inc.*, No. 6:22-cv-

265-ADA (W.D. Tex. Dec. 23, 2022), Dkt. 39.  It has also sued Twitter, Pandora Media and LinkedIn in cases that remain pending.[8]

On March 17, 2023, VCA filed this action against Google.  Compl.  In its Complaint, VCA alleges that the "invention relates to the field of creating and distributing media content, in particular, creating media content based upon submissions received on an electronic media exchange."  *Id.* ¶ 11.  VCA alleges the "claimed invention . . . offers a unique, unconventional, and specially configured combination of 'subsystems' in which to address the Internet-centric problem" because, VCA alleges, these subsystems are "configured in a very specific (and not generic), unconventional and non-routine manner."  *Id.* ¶¶ 11-21; 37-44.  VCA accuses the website https://photos.google.com/ of infringing each of the Asserted Patents.  *Id.* ¶¶ 22 and 45.

## III.   LEGAL STANDARD

### 1.   Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (Courts should neither "strain to find inferences favorable to

---

[8] *Virtual Creative Artists, LLC v. Twitter, Inc.*, No. 22-6890 (N.D. Ill. Dec. 8, 2022);  *Virtual Creative Artists*, *LLC v. Pandora Media, LLC*, No. 23-2671 (N.D. Ill. April 28, 2023);  *Virtual Creative Artists, LLC v. LinkedIn Corporation*, No. 23-3172 (N.D. Ill. May 19, 2023).

plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

2.      **Section 101**

Section 101 limits patentable subject matter to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has long held that abstract ideas are unpatentable.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Patentability under Section 101 is a threshold legal issue, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), which may be resolved at the motion to dismiss stage.  Indeed, courts routinely address Section 101 challenges on the pleadings.  *See, e.g., Sanderling Mgmt. Ltd. v. Snap Inc.*, No. 2021-2173, 2023 WL 2904758, at *3 (Fed. Cir. Apr. 12, 2023); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Network Apparel Grp., LP v. Airwave Networks Inc.*, 154 F. Supp. 3d 467, 473 (W.D. Tex. 2015), *report and recommendation adopted*, No. 6:15-CV-00134, 2016 WL 4718428 (W.D. Tex. Mar. 30, 2016), *aff'd*, 680 F. App'x 1003 (Fed. Cir. 2017) (collecting cases).

Courts follow a two-step process to determine whether an invention claims patent-ineligible subject matter:  At Step One, the Court determines "whether the claims at issue are directed to one of the patent-ineligible concepts," such as an abstract idea.  *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361 (Fed. Cir. 2021).  This inquiry evaluates "'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."  *Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019).  Step One "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool."  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (citations and quotations omitted); *see also id.* ("To be directed to a patent-eligible improvement to

computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself.").

At Step Two, the Court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim' into a patent-eligible application." *Free Stream*, 996 F.3d at 1361 (citation omitted). "To save a patent at Step Two, an inventive concept must be evident in the claims." *Two-Way Media Ltd v. Comcast Cable Communs.*, LLC, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

## IV.   ARGUMENT

### A.   Claim 1 of the '480 Patent and Claim 1 of the '665 Patent Are Representative for Purposes of Section 101

The Supreme Court, Federal Circuit, and district courts routinely find claims ineligible based on representative claims. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014) (one claim representative of 200+ claims); *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 701 (Fed. Cir. 2023) (affirming district court's dismissal, see 2021 WL 3161175, which relied on a single claim from each of three patents to represent dozens of claims); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) ("lengthy and numerous claims" of three patents represented by one claim); *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 577 (W.D. Tex. 2021) ("A district court may analyze representative claims for patent eligibility where all of the asserted and challenged claims are substantially similar and linked to the same purported abstract idea.").

Here, Claim 1 of the '480 Patent and Claim 1 of the '665 Patent are representative. They are the only claims asserted in the Complaint, and the Complaint fails to discuss any other claims. They are also the only independent claims in each Asserted Patent. For the '480 Patent, the dependent claims merely describe basic variations of the independent claim such as

8

specifying that the electronic media submissions include "images and text" (Claim 2), or "video" (Claim 6), or how the information will be filtered, such as based on a topic, title, text, or subject matter (Claims 7-16).[9]  The '665 patent is structured similarly, with only one independent claim (Claim 1) and the dependent claims similar in subject matter to those in the '480 patent.  They too describe basic variations of the same abstract idea.[10]  Claim 1 of the '480 Patent and Claim 1 of the '665 Patent are thus representative for purposes of Section 101.

B.   *Alice Step One:*  **Claim 1 of the '480 Patent and Claim 1 of the '665 Patent Are Directed to Abstract Ideas**

1.   **The Claims Are Directed to Unpatentable Human Activities and Information Gathering**

Step One looks holistically at the claims' overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  The Federal Circuit has explained that for computer-based claims, the first step of *Alice* asks whether the claims focus on a "specific means or method that improves the relevant technology," which may pass muster under Section 101, or on a "result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery," which cannot.  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).  These claims fall squarely within the latter category.

"Stripped of excess verbiage," the claimed concept of the Asserted Patents is straightforward.  *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256- 57 (Fed. Cir. 2016).  The claims are directed to the abstract idea of soliciting ideas from individuals and

---

[9] *See* '480 Patent, Claims 2-6 (describing types of media that can be submitted); Claims 7-16 (different filtering, such as topic, subject matter, and ratings); Claims 17-20 (rating or voting on content); Claims 21-22 (storage of user data such as categories and the date/time of submission).
[10] *See* '665 patent, Claim 2 (uploading submissions "over the public network"); Claims 3-7 (submission can include video, text, are editable, are solicited or unsolicited); Claims 8-16 (filtering by categories, title, etc.); Claims 18-20 (allowing users to vote or rate content); Claims 21-22 (storage of user data such as categories and the date and time of the submissions).

9

allowing them to vote on the results.  This is not an improved computer process, but rather a

long-practiced human activity.  Humans have long conducted contests where individuals submit

ideas and the most popular submission wins, including the Planters Peanut logo in 1916,[11] the

Sydney Opera House design in 1954,[12] and The New York Times crossword puzzle since at least

1982.[13]  Because the Asserted Patents seek to claim this human activity "over the Internet," they

are directed to an unpatentable abstract idea.  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,

715-16 (Fed. Cir. 2014) ("implement[ing] the abstract idea with routine, conventional activity"

and "invocation of the Internet" cannot save abstract claims).

 *In re Jobin* is highly instructive.  811 F. App'x 633 (Fed. Cir. 2020).  There, the Federal

Circuit considered the patentability of a claim directed to "developing 'products, advertisements,

games, and other creative realizations,' through reliance on participants who, by contributing,

obtain stakes in the developed products."  *Id.* at 634.  The claim was extraordinarily lengthy and

included technical-sounding limitations like "data structures," "data records," "servers," and

specific "insight groupings."  *Id.* (quoting claim 221).  Nevertheless, the Federal Circuit found it

directed to an unpatentable abstract idea.  "Despite its expansive language and its recitation of

servers and databases, … Jobin's application is, at bottom, directed to the collection,

organization, grouping, and storage of data using techniques such as … crowdsourcing.  As the

Board correctly concluded, this claim is directed to a method of organizing human activity—a

hallmark of claims directed to abstract ideas."  *Id.* (citing *Elec. Power*, 830 F.3d at 1354).  The

technical terminology in the claims, such as the servers and databases, "are merely tools used for

---

[11] Franz, *supra*.

[12] Doust, *supra*.

[13] United Press International, *supra* ("some of the newspaper's puzzles were devised by the puzzle editor, Eugene T. Maleska. Others come from contributors, most of whom submit items regularly, Mr. Greenfield said").

organizing human activity, and are not an improvement to computer technology." *Id.*

This analysis applies perforce to Claim 1 of the '480 Patent and Caim 1 of the '665 Patent.  VCA claims no more than "crowdsourcing" using a computer rather than offering any improvement in computer technology.  VCA's complaint **admits** that the claims are directed to this human-centric problem, noting that "[t]he claimed invention" "predates modern crowdsourcing solutions."  Complaint, ¶ 11; *Customedia*, 951 F.3d at 1365 ("To be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself.").  For Claim 1 of the '480 Patent, amongst generic functional language, the focus of the claim is to:  (1) "receive electronic media submissions from a plurality of submitters"; (2) "select and retrieve a plurality of electronic media submissions," including based on filtering; (3) "make the multimedia content electronically available for viewing"; and (4) "enable a user to electronic vote for or electronically rate" content.  Claim 1 of the '665 Patent is no different, reciting:  (1) "electronically retrieving a plurality of electronic media submissions"; (2) "generating a multimedia file from the retrieved electronic media submissions," including based on filtering content; (3) "transmitting the multimedia file … for viewing"; and (4) allowing users to "electronically transmit data indicating a vote or rating."  The claims include no specific algorithm, special programming, or new hardware.  They instead state only the desired result, and in doing so are directed to an abstract idea.

*Electric Power*, 830 F.3d 1350, cited in *Jobin*, further supports this conclusion.  In *Electric Power*, the unpatentable claims were related to "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results."  *Id.*  The claims included detailed limitations such as "receiving

a plurality of data streams, each of the data streams comprising sub-second, time stamped synchronized phasor measurements wherein the measurements in each stream are collected in real time at geographically distinct points over the wide area of the interconnected electric power grid." *Id.* at 1351.  Despite the detailed limitations, the court held that the "focus of the asserted claims . . . [was] on collecting information, analyzing it, and displaying certain results of the collection and analysis." *Id.* at 1353.  And because the claims were not directed to improving computer technology but to simply gathering information, they were abstract.  *Id.* ("[C]ollecting information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas.").  The claims of the Asserted Patents are similarly directed to merely "collecting information, analyzing it, and displaying certain results of the collection and analysis" and are therefore unpatentable as shown in *Electric Power*.

In sum, the Asserted Patents are not "directed to a specific improvement to the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (finding claims focusing "on the specific asserted improvement in . . . capabilities" of a database were not abstract).  The claims recite known technologies (servers, databases) to implement an abstract idea without any improvement to the underlying technology itself.  Indeed, the Asserted Patents do not purport to improve the functioning of computers in any way.  Because they claim a "crowdsourcing" process long performed by humans, the claims are directed to abstract ideas under Section 101.  *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (finding ineligible a "quintessential 'do it on a computer' patent" because it merely automates "pen and paper methodologies").

2.      **The Specification and Intrinsic Record Confirms the Abstract Nature of the Claims**

While the focus of the *Alice* analysis is on the claims, the patent specification[14] confirms their abstract nature.  In a section entitled "Applications of the Invention," the patentee describes several example scenarios of how the alleged invention would work in practice.  '480 Patent at 36:42-39:6.  But none of these "applications" contain any reference to improved computers or software, but rather describe basic human activity of "crowdsourcing" ideas.  For example:

> The creator is seeking humorous and original material for a new line of greeting cards.  All content must be no more than 10 words on the front and no more than 20 words inside the card.  A request through the network has been submitted to receive a greeting card concept that meets these parameters.  While the creator is looking for mainly humorous copy concepts, they will accept accompanying illustrations (although they are not mandatory).  The creator is willing to pay $250 for each selected greeting card idea.  Prior greeting card writing experience is not necessary; just clever, fresh, humorous ideas that the creator feels there is a niche for.  Creator has also chosen to participate in a points awards program offering a predetermined number of points for each idea submission.

'480 Patent at 37:49-62.[15]

The provisional application similarly highlights the basic underlying abstract idea at issue, which it termed the "Infinity Concept."  Ex. A.  Allowing people to submit "funny stories" to writers of their favorite TV shows, which can then be incorporated in future scripts.  This is not an improved computer technology, but at best "merely automate[s] or otherwise make[s] more efficient traditional methods."  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310,

---

[14] The Asserted Patents share a common specification since they stem from the same parent patent application.

[15] *See also id.* at 36:52-54 ("A creator wants to develop a game show where information is gathered about the public's perception on various issues."); *id.* at 36:64-67 ("A Production company, acting as a third party end user, is looking to produce a feature film about the story of an individual who survived against extraordinary odds in military combat."); *id.* at 37:10-12 ("A music company executive, acting as a third party end user, is looking for a talented lyricist, arrives at the exchange to perform an open search."); *id.* at 37:19-21 ("A creator wants to put together a country western CD of 10 songs from . . . relatively unknown artists.").

1319 (Fed. Cir. 2021).

Declarations submitted to the Patent Office by the named inventors themselves[16] further support that the alleged invention is not directed to any improvement in computer technology, but rather simply soliciting ideas over the Internet for creative projects:

> 2.   Although Michael Tota, the primary inventor of the present invention, had discussed the invention with me in passing prior to November of 1997, I can specifically recall when he shared his idea with the family at Thanksgiving dinner of that year.  Michael stated that he had an idea to create media content by soliciting ideas and stories interactively on the Web.  People would submit their funny stories via the Internet, which would then be used as the basis for a television show/script, movie, or some other form of media.  He called this the "infinity concept".  I believe that everyone at dinner can vividly

Ex. C (Kenneth Tota Declaration).

> 4.   In late October, my girlfriend Loni Lowman and I were out late one evening and we stopped at Mano's Diner in Elmira, New York for a late breakfast.  Over approximately the next hour we talked in detail about my concept to use the Internet as a resource to tap into the limitless ideas and experiences of people on the Internet.

Ex. L (Michael Tota Declaration). The record confirms that the alleged invention is directed to abstract ideas.

---

[16] The declarations are part of the prosecution history of a parent patent.  They therefore are part of the intrinsic record for the Asserted Patents and subject to judicial notice for purposes of this motion.  *See Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004) (the prosecution history of a "parent application" to an asserted patent is "therefore part of the [asserted] patent's prosecution history"); *see also Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021) (affirming judgment on the pleadings that claims were directed to abstract idea based on applicant's statements during prosecution); *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 fn. 2 (W.D. Tex. Jan. 3, 2022) ("Courts may take judicial notice of government records, like prosecution history . . . even when resolving a Rule 12(b)(6) motion.").

14

C.   *Alice* **Step Two: Claim 1 of the '480 Patent and Claim 1 of the '665 Patent Do Not Recite an Inventive Concept**

1.   **There is Nothing "Significantly More" Present To Save Their Validity**

At Step Two, the Court determines whether the claims "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quotations and citation omitted).  An inventive concept is "an element or combination of elements … sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *PersonalWeb*, 8 F.4th at 1318.  Here, the claims do not include any "inventive concept" that would remove them from being patent ineligible.  The claims are written in functional language and include only generic computer functionality.  Claim 1 of the '665 Patent recites a generic "computer" and then describes the abstract idea using conventional computer components such as "databases,"  "web-browsers" and "multimedia files."  Claim 1 of the '480 Patent is similar, except it appends the term "subsystem" to each recited function.  For example, an "electronic multimedia creator server subsystem" or "electronic voting subsystem."  However, the claims include no specific hardware requirements or algorithms for these "subsystems," describing them instead only in terms of their function.  Moreover, "subsystems" are not even mentioned in the patent specification, let alone an "electronic media submissions server subsystem" or "electronic multimedia creator server subsystem" as claimed.  '480 Patent, Claim 1.  Adding "electronically" or generic "databases" and "servers" to the claim does nothing to transform it into an improvement in technology, as opposed to claiming an abstract idea.  *PersonalWeb*, 8 F.4th at 1319 ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

That the claims include various technical-sounding terms such as "electronic multimedia

creator server subsystem" to accomplish the abstract idea is of no help.  "The mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive."  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (affirming district court's dismissal under Section 101 where the claims "recite[d] no more than routine steps of data collection and organization using generic computer components and conventional computer data processing activities.").

The claims' functional language with conventional computer components is insufficient to save claims from patent ineligibility.  *See Affinity/DIRECTV*, 838 F.3d at 1262 (finding no inventive concept because "[t]he claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"); *see also Alice*, 134 S. Ct. at 2357-60 (rejecting argument that recitation of "data processing system," "communications controller," or "data storage unit" conferred patent eligibility); *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (rejecting argument that recitation of "telephone unit," "server," "image analysis unit," and "control unit" conferred patent eligibility).

Even considering the representative claims as an "ordered combination" adds nothing to confer patent-eligibility.  *Alice*, 134 S. Ct. at 2359-60.  Nothing in the claims "purport[s] to improve the functioning of the computer itself" or to "effect an improvement in any other technology or technical field."  *Id.* at 2359.  Nor are the claims "necessarily rooted in computer technology" to "overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  Rather, the claims merely "follow[] a conventional order of how data is usually analyzed: data is first

received, then processed, and then signals are outputted as a result." *Immersion Corp. v. Fitbit, Inc.*, No. 17-cv-3886, 2018 WL 1156979, at *18 (N.D. Cal. Mar. 5, 2018).  And "merely selecting information, by content or source, for collection, analysis, and display" does not provide an inventive concept. *Elec. Power*, 830 F.3d at 1355.

The claims here are similar to those in *University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).  There, the patent claimed "a method and system for 'integrat[ing] physiologic data from at least one bedside machine.'" *Id.* at 1366.  But the patentee "acknowledge[d] that data from bedside machines was previously collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer." *Id.* at 1367.  This is similar to the Asserted Patents, which take the age-old idea of soliciting ideas from the public, and simply do it on a computer.  Indeed, the Patent Office itself identified as one of the closest pieces of prior art a screenwriting contest, noting only it was deficient because it was "manual."  Ex. K at 2. While the patentee in *University of Florida Research Foundation* argued its implementation was not conventional at Step Two, the Federal Circuit rejected that argument because the claims "recite the abstract idea of 'collecting, analyzing, manipulating, and displaying data,' and … us[e] 'a general-purpose computer' to carry it out." *Id.* at 1369.  "An inventive concept … cannot simply be an instruction to implement or apply the abstract idea on a computer." *Id.* (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)).  Again the same holds true here.  The claims here "do no more than simply instruct the practitioner to implement the abstract idea on a generic computer" and thus do not have an inventive concept at Step Two. *Id.* at 1369 (cleaned up).  The Asserted Patents "add nothing of substance to the underlying abstract idea identified at step-one," of the *Alice* analysis, and are therefore "patent ineligible under

[Section] 101." *Alice*, 573 US at 226.[17]

### 2. Determination of Ineligibility Under 35 U.S.C. § 101 Is Appropriate On A Rule 12(b)(6) Motion To Dismiss

Patent eligibility under 35 U.S.C. § 101 is a threshold issue of law. *Bilski*, 561 U.S. at 602. Indeed, early disposal of such claims can "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014). Dismissal now is appropriate given the strong showing of ineligibility.

The allegations in VCA's Complaint purportedly directed at Section 101 do not change this analysis. They are largely ***cut and pasted*** from the applicant's arguments during prosecution of the Asserted Patents in 2016 or earlier. *Compare* Compl. ¶¶ 11-20 with Ex. J (14/308,064 Prosecution at July 19, 2016 Amendment) at 5-11; *compare also* Compl. ¶¶ 37-43 with Ex. G (13/679,659 Prosecution at August 16, 2016 Amendment) at 6-12.[18] The court must generally accept as true all "well-pleaded ***factual*** allegations." *Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). But VCA's cut and paste arguments are not factual allegations, they are legal conclusions and attorney argument. Simply saying—as VCA does—that the claim is "very specific (and not generic)" does not make it so. Complaint, ¶ 13. VCA's legal arguments cannot form the basis for a factual dispute.

---

[17] No plausible claim construction could confer patent-eligibility because the claims at issue are not directed to any concrete patent-eligible invention. VCA will not be able to identify any proposed claim constructions that could save the claims from ineligibility.

[18] That a patentee overcame Section 101 rejections during prosecution is not determinative. *Plotagraph, Inc. v. Lightricks, Ltd.*, No. H-21-3873, 2022 U.S. Dist. LEXIS 141294, at *14 n.1 (S.D. Tex. Aug. 9, 2022) (granting motion to dismiss and rejecting argument that "claims include[d] patent eligible subject matter because the patent office withdrew a section 101 rejection during prosecution of the patents after the claims were amended" and noting that "[t]he Examiner's decision, on an original or reissue application, is never binding on a court.'") (citing *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985)); *Miller Mendel, Inc. v. City of Anna, Texas*, 598 F. Supp. 3d 486, 491 (E.D. Tex. 2022) (dismissing claims as unpatentable where rejection under Section 101 was overcome during prosecution).

Even assuming, *arguendo*, that the legal conclusions and attorney arguments included in the Complaint were presumed to be true, they still do not save the Asserted Patents from ineligibility under Section 101.  For example, VCA asserts "For example, claim 1 requires an 'electronic media submissions database,' which is a subsystem that receives media submissions from Internet users."  Complaint, ¶ 13.  That statement simply restates a function, which is no more than the abstract idea itself.  The complaint then goes on to argue "This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased [sic] required in the claim."  But the claims contain no requirement on how "scalable" any database is, rendering this argument ineffective.  *Two-Way Media*, 874 F.3d at 1338-39 ("The main problem that Two-Way Media cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing an inventive concept.").  And the specification itself disclaims any requirement that it is limited to a specific database.  '480 Patent at 39:9-11 ("the present invention is not limited to the representative examples disclosed herein or the preferred embodiment of television and the Internet").

VCA further alleges all the "subsystems" required by the claims are "configured in a very specific (and not generic), unconventional and non-routine manner to offer the novel and non-obvious claimed invention."  Compl. ¶ 13.  But these are merely "threadbare recitals of the elements of" Section 101 patent eligibility, not factual allegations that meet the requirements of Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678.  VCA's allegations that components of the system are "configured to" perform such functions such as "receive, store, and manage multiple petabytes" of data (Compl. ¶ 13) are again not required by the claims, which include no requirement on how much data or information must be used.  Regardless, "purely functional and generic" hardware is

insufficient to save a claim at *Alice* Step Two.  *See, e.g.*, *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1252 (Fed. Cir. 2021).[19]  At best, the Complaint calls out "purely functional and generic" terms which merely recite the abstract idea.  *Alice*, 573 U.S. at 226.  Such terminology, either alone or in combination, cannot save the patent from being an abstract idea.

## V.    The Complaint Should be Dismissed with Prejudice

Google respectfully submits that VCA should not be granted leave to amend because amendment would be futile.  *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012).  VCA has pleaded its best case and no amount of pleading can save the claims from unpatentability.  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (affirming district court's dismissal with prejudice of claims found invalid under Section 101).

## VI.   CONCLUSION

For the foregoing reasons, VCA's complaint should be dismissed with prejudice.

---

[19] This is in contrast to *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019), where this Court found an issue of fact based on "Patent's use of common key encryption is an inventive concept."  There are no similar technical components present here.  The same is true of *Ubiquitous Connectivity, LP v. City of San Antonio*, No. SA-18-CV-00718-XR, 2019 WL 4696421, at *10 (W.D. Tex. Sept. 26, 2019) where the plaintiff alleged the claim's components "could not have been purchased off-the-shelf, and required assembly of OEM components and coding."  Again, no such unconventional components or technology are present here.

20

36399836v.1

Dated: May 30, 2023

Respectfully submitted,

By: /s/ *Erica Benites Giese*
Erica Benites Giese
Texas State Bar No. 24036212
egiese@jw.com
Nathaniel St. Clair
nstclair@jw.com
JACKSON WALKER LLP
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
(210) 978-7900
(210) 242-4646 (facsimile)
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 (facsimile)

Jordan R. Jaffe
Cal. Bar No. 254886
jjaffe@wsgr.com
Catherine R. Lacey
Cal. Bar No. 291591
clacey@wsgr.com
Callie R. Davidson
Cal. Bar No. 335639
cdavidson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
(415) 947-2099 (facsimile)
633 W 5th Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

21

### CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

<div align="right">

*/s/ Erica B. Giese*
Erica Benites Giese

</div>

22

36399836v.1